UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:17-CR-95-DCR-HAI-1 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| MARCELLA LORENZO DUNBAR, | ) | |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal prisoner Marcella Lorenzo Dunbar ("Dunbar") has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 110. The motion form is accompanied by a memorandum and various court records from Michigan. D.E. 110-1.

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Dunbar is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

In accordance with local practice, the matter was assigned to the undersigned for the purposes of conducting a preliminary review. *See* Rules Governing Section 2255 Cases, Rule 4. Under such review, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Id.*; *see also* 28 U.S.C. § 2255(b) (permitting dismissal of a § 2255 motion when "the files and records of the case conclusively show that the prisoner is entitled to no relief").

For the reasons explained below, Dunbar's motion should be dismissed upon initial review.

## I. Background

On October 30, 2017, Dunbar pleaded guilty to one count of conspiracy to distribute oxycodone and one count of being a felon in possession of a firearm. D.E. 42 (minutes); D.E. 43 (plea agreement).

Dunbar's plea agreement contains the following waiver provision:

> The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

D.E. 43 at 6 ¶ 9.

At the time of his plea, Dunbar was represented by appointed counsel Mary Ann Leichty. In January 2018, Ms. Leichty withdrew, and John Tennyson appeared *pro hac vice* as Dunbar's retained counsel. D.E. 49, 53.

In February 2018, Dunbar was sentenced to a total term of 105 months of imprisonment. D.E. 64. The record contains transcripts of Dunbar's rearraignment (D.E. 100) and sentencing (D.E. 83).

Dunbar appealed. He argued on appeal that his sentencing enhancement for obstruction of justice was invalid and that his criminal history points were incorrectly calculated (the same as Grounds One and Two in his § 2255 motion). *See* D.E. 110 at 3. But the Court of Appeals did not reach the merits. It dismissed Dunbar's appeal on account of the appeal waiver in his plea agreement—Dunbar had no right to appeal because his sentence was within the Guidelines Range as calculated by the trial court. D.E. 101. The appellate court "conclude[d]" that Dunbar "entered into the plea agreement—and accepted the waiver of appellate rights contained therein—knowingly and voluntarily." *Id.* (quotation marks omitted).

## II. Timeliness

Dunbar's petition is timely. A one-year period of limitation applies to federal prisoners' habeas motions. 28 U.S.C. § 2255(f). This limitation period begins to run from the latest of four specified dates, only one of which is relevant. Subsection (f)(1) starts the clock on "the date on which the judgment of conviction becomes final." Judgment was entered on February 2, 2018. D.E. 64. Dunbar's appeal was dismissed on February 14, 2019. D.E. 101. Supreme Court Rule 13 provides 90 days to petition for a writ of certiorari. This 90-day period expired on May 15, 2019. Dunbar's judgment became final that date, and his one-year habeas clock began running. His motion was filed less than a year later. On March 30, 2020, the Court received Dunbar's motion, but the form was undated and unsigned. D.E. 106. He later submitted a signed motion form that was backdated to March 30. D.E. 110 at 13. The Court construes the filing of the

original motion—which occurred at the latest on March 30—as timely tolling the statute of limitations.

### III.  Defining the Issues

Dunbar raises three grounds for relief.  The first concerns his obstruction-of-justice sentencing enhancement.  D.E. 110 at 5.  As stated in his memorandum, he argues that the application of USSG § 3C1.1 was a sentencing error.  D.E. 110-1 at 1.  Second, Dunbar argues that the Court erred when it treated two criminal history cases which were resolved on the same day as two separate sentences.  *Id*. at 11.  Third, Dunbar argues his sentencing enhancement for possession of a firearm was improper.  *Id*. at 15.

As previously noted, Dunbar's plea agreement expressly waived his collateral-attack rights except for claims of ineffective assistance of counsel.  D.E. 43 at 6 ¶ 9.

If done knowingly and voluntarily, a criminal defendant may, by the terms of the plea agreement, waive his right to file a direct appeal and his right to collaterally attack his conviction and sentence under § 2255.  *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001).  A prisoner may challenge the validity of such a waiver on the basis that "his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel."  *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007).

Dunbar does not argue in his § 2255 motion that his plea was not knowing and voluntary.  Nor does he argue that his decision to plead guilty was the product of ineffective assistance.  Further, the Court of Appeals has already determined that Dunbar's guilty plea is valid and the waiver provision is enforceable.  D.E. 101.  The waiver must be enforced.

Applying the principle that *pro se* motions are to be liberally construed, the Court generously interprets Dunbar's motion as alleging claims of ineffective assistance of counsel.[1] However, even viewed through the lens of ineffective assistance, the record of the case conclusively show that Dunbar is entitled to no relief. 28 U.S.C. § 2255(b). His motion should therefore be dismissed upon initial review. Rules Governing Section 2255 Cases, Rule 4.

### IV. Legal Standards for Ineffective Assistance of Counsel

To successfully assert an ineffective-assistance-of-counsel ("IAC") claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Strickland*, 466 U.S. at 688. But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted).

In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the

---

[1] Dunbar's memorandum does include two specific allegations of ineffective assistance, which the Court will address. D.E. 110-1 at 12, 16.

*Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697. To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

## V. Ground One – Obstruction-of-Justice Enhancement

Section 3C1.1 of the Guidelines provides an enhancement for obstructing or impeding the administration of justice:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1. Dunbar argues this enhancement was erroneously applied. D.E. 110-1 at 1-10. The Court construes the argument as one that counsel was ineffective in failing to circumvent the application of this enhancement.

In his plea agreement, Dunbar acknowledged the possibility of this enhancement:

> (d) The Defendant understands that he may receive a two level enhancement under U.S.S.G. § 2Bl.l(a)(15) [sic], for the presence of a firearm. The Defendant also understands that he may receive a two level enhancement for Obstruction of Justice under U.S.S.G. § 3Cl.l(a)(15) [sic]. The Defendant reserves the right to object to either designation if it is applied.

D.E. 43 at 5 ¶ 5(d). Dunbar's PSR accordingly notes:

> Pursuant to the written agreement, the parties indicated that the defendant understands that he may receive a two level enhancement under "U.S.S.G. § 2Bl.l(a)(15)", for the presence of a firearm. *(It should be noted that the correct citation should be § 2D1.1(b)(1)).* The defendant also understands that he may receive a two level enhancement for Obstruction of Justice under "U.S.S.G. § 3Cl.l(a)(15)". *(It should be noted that the correct citation should be § 3C1.1).* The defendant reserved the right to object to either designation if it is applied.

D.E. 72 at 6 ¶ 11.

Dunbar's PSR recommended that the obstruction enhancement be applied in his case:

29.    As agreed in paragraph 3(d) of the defendant's plea agreement, the defendant did not stop his vehicle when officers were attempting to arrest him, he was observed throwing pills out of the window and he destroyed the cellphone that was used to make the drug related transactions.

30.    Additionally, the government intends to provide testimony at sentencing, should it be necessary, that prior to destroying his cellphone, he placed a call to his co-defendant, Jones, and advised him that the police were about to arrest him. As a result, Jones attempted to leave the residence and take cash and drugs with him.

31.    It is the probation officer's belief that the three actions taken by the defendant (throwing pills out of the vehicle window, destruction of the cellphone used for drug trafficking, and warning a codefendant the he was about to be arrested) combined, rise to the level of the 2 level enhancement.

D.E. 72 at 9.

Defense counsel objected to the application of the obstruction enhancement and argued against its application in a letter to the Probation Office. *See* D.E. 72 at 30-33. The author of PSR responded in support of the enhancement. *Id.* at 27-28.

Defense counsel then filed a sentencing memorandum and provided further argument against the application of the enhancement. D.E. 54 at 5-8. Dunbar's memorandum contains verbatim some of the arguments from the sentencing memorandum. *Compare* D.E. 54 at 5-8 *with* D.E. 110-1 at 1-10.

At sentencing, the government called a witness in support of the obstruction enhancement—Clark County Deputy Sheriff (and Detective) Mark Craycraft. D.E. 83 at 4. The Court heard then argument on the enhancement and overruled Dunbar's objection: "With regard to the objection on enhancement, objection will be overruled. This is a very clear-cut case in which the enhancement should be applied, and the objection borders on being frivolous." *Id.* at 32.

On this record, Defendant cannot show that counsel was ineffective. Counsel vigorously argued against the obstruction enhancement. Counsel filed an objection to the PSR and argued against the enhancement in both a sentencing memorandum and at sentencing. Because counsel worked diligently to avoid the enhancement, Dunbar cannot establish deficient performance. Nor can he establish prejudice, especially when the Court, after receiving additional evidence at the sentencing hearing, determined the objection was borderline frivolous. D.E. 83 at 32. The record conclusively shows that Dunbar was effectively represented on this issue, so Dunbar's first IAC claim should be dismissed on initial review.

## VI.  Ground Two—Criminal History

Dunbar's PSR, in paragraphs 48 and 49, makes note of two Michigan arrests for home invasion in June 1999. D.E. 72 at 12-13. Dunbar's counsel objected to how they were counted, arguing that because the two cases were sentenced on the same date, they should be treated as a single sentence pursuant to USSG § 4A1.2(a)(2)(B). *Id.* at 28, 34-35.

The author of the PSR initially responded that they should be counted separately because there was "an intervening arrest between the two cases." D.E. 72 at 28. Defense counsel continued to argue the point in his sentencing memorandum. D.E. 54 at 8-9. Probation then issued a second addendum to the PSR, in which the PSR author accepted Dunbar's objection and revised the PSR to reflect zero criminal history points for the conviction in paragraph 49. *Id.* at 36-37. The government objected to Probation's second addendum and presented some additional Michigan court documents at sentencing. D.E. 83 at 15-20. Defense counsel continued to argue the point at sentencing, relying on the Michigan court documents. *Id.* at 20-21. Nevertheless, the Court sustained the government's objection (*id.* at 34-36), and three

history points were assessed for the conviction in paragraph 49, as reflected in the third addendum to the PSR. D.E. 72 at 38.

Dunbar's memorandum shows he is aware of this progression of events. D.E. 110-1 at 14. His argument is that the Court got it wrong. But, as noted, Dunbar waived such arguments in his knowing and voluntary guilty plea. The Court can only consider this claim through the lens of ineffective assistance.

On this record, Defendant cannot show that counsel was ineffective on Ground Two. Counsel vigorously argued against separately counting the paragraph 48 and 49 convictions. Counsel filed an objection to the PSR, which Probation did not originally accept. But once defense counsel filed his sentencing memorandum,[2] Probation agreed with the defense. Only after the Court received further evidence and argument at sentencing did the Court make the final determination that both convictions should be separately counted. Because counsel vigorously and adroitly argued this point, Dunbar cannot establish deficient performance.

Dunbar further argues his counsel was ineffective for "failing to retrieve" certain Michigan court documents. D.E. 110-1 at 12. The record however shows that both the government and defense counsel possessed the relevant Michigan court documents and referred to them throughout the arguments at sentencing. *See* D.E. 83 at 16-25. So, it is not clear how Dunbar would have been prejudiced even if counsel was deficient for failing to obtain the documents earlier.

The record conclusively shows that Dunbar was effectively represented on this criminal-history issue, so Dunbar's second IAC claim should also be dismissed on initial review.

---

[2] The Court notes that much of Dunbar's argument on Ground Two is copied verbatim from the sentencing memorandum. *Compare* D.E. 54 at 8-9 *with* D.E. 110-1 at 11-12.

## VII. Ground Three—Firearm Possession Enhancement

On Ground Three, Dunbar is—understandably—confused about the nature of the enhancement applied to his sentence. Dunbar states in his memorandum that he received an enhancement under USSG § 2B1.1(a)(15). D.E. 110-1 at 15. That subsection actually concerns "an organized scheme to steal or to receive stolen (A) vehicles or vehicle parts; or (B) goods or chattels that are part of a cargo shipment." USSG § 2B1.1(a)(15). Subsection 2B1.1(a)(15) is cited in paragraph 5(d) of Dunbar's plea agreement due to a typographical error. The PSR made note of this error, and correctly identified the enhancement as being one under § 2D1.1(b)(1). D.E. 72 at 6 ¶ 11.

In framing his argument, Dunbar actually quotes from USSG § 2B1.1(a)(16), which states: "If the offense involved . . . (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels." Dunbar then argues that his firearm was not possessed "in connection with the offense." D.E. 110-1 at 15. He argues that counsel was ineffective for failing to argue that he did not possess the firearm and that the firearm was not connected to the offense. *Id.* at 15-16.

Dunbar's argument is misplaced. The actual enhancement applied states, "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." USSG § 2D1.1(b)(1). Dunbar admitted in the factual statement of his plea agreement that

> [a] search of the residence yielded a loaded Taurus .40 caliber pistol under a mattress. [Dunbar's codefendant] stated he had just been called by the Defendant who advised that the police were following him. Further, [the codefendant] stated that the gun under the mattress of the Defendant's bed belonged to the Defendant.

D.E. 43 at 3 ¶ 3(e). The PSR applied this sentencing enhancement based on these facts. D.E. 72 at 8 ¶ 25, 10 ¶ 35. Dunbar cannot plausibly argue that he did not possess this weapon because he pleaded guilty to possessing this very Taurus handgun in his plea to Count 13 for being a felon in

possession of a firearm.  D.E. 43 at 1, 3.  To the extent he argues the gun was not possessed "in connection with the offense," this argument is misplaced due to his confusion over the relevant Guideline.  The enhancement hinged solely on possession.

Dunbar cannot prove IAC on Ground Three because any argument against the § 2D1.1(b)(1) enhancement would have been futile.  Counsel could not have plausibly argued that Dunbar did not possess a weapon when Dunbar had pleaded guilty to possessing the weapon.  Because the record clearly shows no basis for deficient performance or prejudice on Ground Three, it should be dismissed.

### VIII.  Conclusion

"[T]he motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C.A. § 2255(b).  Because "it plainly appears . . . that the moving party is not entitled to relief, the judge must dismiss the motion."  Rules Governing Section 2255 Proceedings, Rule 4.  Here, the record shows that defense counsel vigorously argued the merits of Grounds One and Two.  In fact, Dunbar's memorandum largely recapitulates counsel's arguments.  As to Ground Three, Dunbar misconstrues the firearm-possession enhancement and any objection to its application would have been futile.  All non-IAC claims were waived by Dunbar's plea agreement, which the Sixth Circuit has already determined was valid.  The undersigned therefore **RECOMMENDS** that Dunbar's § 2255 motion (D.E. 110) be **DISMISSED** upon initial review.

This case does not warrant an evidentiary hearing, and Dunbar has not requested one.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue.  Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *See also* Rule 11 of the Rules

Governing Section 2255 proceedings.  This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  The Court has considered the issuance of a Certificate of Appealability as to each of Dunbar's IAC claims.  No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

Any objection to, or argument against, dismissal must be asserted properly and in response to this Recommended Disposition.  The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings, Rule 8(b).  Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 22nd day of May, 2020.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**